May it please the Court, Steve Sadie from the Federal Defenders v. Gerald Barnes. This case involves the constitutional adequacy of proceedings that resulted in the civil forfeiture of a citizen's property. The civil forfeiture was based on alleged violations of criminal law that were denied by Mr. Barnes and were never proved. Two parts of the civil asset forfeiture statutes provide context for these arguments. First, the case started with the execution of a Drug Enforcement Administration search warrant, during which Mr. Barnes denied dealing drugs. He was indicted and eventually acquitted of charges related because the firearms were seized and one of them was short-barreled. The civil asset forfeiture proceedings ran parallel to the criminal proceedings, with Mr. Barnes representing himself and the criminal activity, the criminal prosecution, continuing until the acquittal. In terms of his self-representation, it's sort of odd because the government maintains that it spoke to a lawyer on his behalf a couple times with regard to the civil proceedings. That appears only in the denial of the petition and there's no evidence regarding that, but I think that the important thing to look at are two parts of the statute. One is that there is a specific provision in 18 U.S.C. 983b1, which provides that where the person in a related case is facing criminal charges, that the provisions of the Criminal Justice Act provide a basis for appointment of counsel on the related matter, on the civil forfeiture. If that had happened, that should have been either flagged by the government or it should have been acted upon by an attorney. But the second, I think, is even more important. Let's take that point. Aren't you arguing, let's assume, okay, he's prosaic, we should liberally construe. Yes. What is it that we're construing? He got notice of his options. Are you saying the notice was defective? Yes. Okay, and that was because? A number of things. I mean, the original notice about what his options were. The original notice on what his options were was defective. Again, giving it statutory context, remember that the statute at 983a2 has said this is supposed to be in written, that it's supposed to be a claim need not be made in any particular form. Yes. And that the form shall be written in easily understood language. We're talking about a reform that was aimed at making it people friendly. This form is not people friendly. Okay, so you're basically making a facial challenge to the notice. We are going in two levels. Yes, facially, if you look at the form and the combination of treating the claim and the petition as a single matter, stating that the claim can be in a single form but then applying very technical readings to it and the use of the word remission. I've been a lawyer a long time. I had to look up what the heck that was in the dictionary, and I'm still not sure what it means because I can remit a payment with a bill. That just means return it, and that seems to be how it's used in the first paragraph of the notice. And then you look at the New Testament version of remission, which is more in the way of pardon, how it's used in the second paragraph. Okay, so I'm looking at the form. Okay, so we now understand that. So you look at what he then sent to. One was not signed properly. They kicked it back. Okay, so I'm looking at the June 15th letter, and he says request remission. Whatever remission may mean, the notice did say you can either request remissions or mitigation, or you could file a claim, or you could do both. Yes. Okay, so he sends a document which says I request remission, and he lists it. So it doesn't say petition. It says request. He wants it returned, but then he explains why, and that's the critical thing. Okay. He's explaining why because I have a right to it. I didn't. I brought it lawfully. I possessed it lawfully. I had a right to it under the Second Amendment. Give it back. That's not oh, I'm so sorry. Please let me have it back because I regret my sins, but you should exercise mercy. That's how they're saying that. That's how they're construing that. That is a completely unfair misconstrual of what he said. He did not use the expression petition. He said a claim. He used it exactly how it's used in the first paragraph in the sense of return. He wanted return of his property that he had a right to. So there's two levels. We're saying that the form that he was given was unfair in terms of the type of notice and opportunity that that offered, and that second, once he responded, that them construing it as solely a petition for remission instead of a combined claim in whatever form you want to do it in, doing it in plain language, he was doing the best he could to say I want my property back because I have every right to it and you have no right to take it. Okay, so let's go back to the form then because the form is two sections. It's your request. You say you quarrel with his use of the word request as opposed to permission. It says bold caps, request remission or mitigation. Then it says a separate boldface section to contest the forfeiture. So you're saying he couldn't have... What we're saying is that he was told you can do and or, you can do these both things if you're asking for them back. He's saying I'm asking for them back and I'm asking them back because you have no right to them. I have every right to have them, give them back. In other words, the narrative is being construed as both the explanation for the remission, parenthesis, pardon, or mitigation, and it also should be construed as the claim on the merits. Yes, okay. And I think it's more strongly... He gets the July letter that clearly calls it a petition for remission. I gather your response to that is, well, it was partly a petition for remission. That's right. It's exactly as the court dealt it in the Frazier case where they said, okay, the fact that you're ruling on or considering it as a petition for remission doesn't say that I'm not ruling on it as a claim or that you are somehow giving up a right that he has clearly asserted in the... Has he ever filed a declaration saying he actually was confused? I think that the representations of his counsel were very clear on that and that we continue to make those from the... What actually happened is that's clearly what was going on, that he was trying his best to meet the requirements of a very difficult form. The other thing, what he didn't address, which is I guess the key fact, is whether he had the guns for the purpose of forwarding a drug crime. He was... I read his statement as very clearly saying no. He didn't say that. He said, I got them legally, but he didn't say, and I didn't have them for the purposes of drug dealing. He said he had every right to possess them and that he was using them in the Second Amendment. I don't think the National Rifle Association doesn't think you can possess... I guess he said he was a collector or something. Yes, he also made that statement. Remember that in the criminal complaint, paragraph six, they knew from day one he denied dealing drugs. This is not a situation where we can try to read him as saying, well, I did something wrong with my guns and therefore I should get them back. This civil asset forfeiture is an area that can be rife with traps for the unwary. This is a case where the Constitution and the statutes combine to make it a right case for reversal in order to accomplish the purposes of the civil asset reform. Thank you. May it please the Court. Good morning. Katie Lorenz, appearing on behalf of the United States. I'd like to begin by addressing an argument that was raised in Mr. Barnes' reply brief and something sort of hinted at, again, by Mr. Sadie just now. And that is this idea that the petition for remission option is something that no objectively reasonable person would ever select because they're asking... I understand what you're saying. That was an argument that I picked up on in the reply brief in any event. And I believe Mr. Sadie just referred to that as a sort of trap that the unwary can fall into. In other words, that they have inadvertently chosen an option that only has... I must say that I had a similar reaction to the one that was reported. I had no idea what this was talking about when I read it. I had never heard of this. And also I've been around the courts for a long time. And it did strike me that in the ultimate letter reporting its decision, there was a perfectly clear explanation of what this meant. But in this document, there was basically no explanation. Well, I think that at that point we have to go to an objectively reasonable standard of what someone of common intelligence would understand. Well, I didn't think I had common intelligence. And I really did not know what they were talking about. I think if we look at this form, at ER 41, that's the notice that was sent to Mr. Barnes and that's used by the DEA. It sets forth, yes, it's in small print and it's something that's going to be unfamiliar to someone who's never encountered a forfeiture procedure before. But it lays out in bold, capitalized letters. One thing, it's in the opposite order that one would expect, right? In other words, if one was writing, if you really wanted to tell somebody what they were supposed to do, you would say in English, if you don't think this is being legally forfeited, you should do X. And if you agree that it is legally forfeitable but you want us to be nice to you, then you should do Y. I mean, that would be the ordinary, you know, person-to-person way of communicating this. Instead, it's put in the opposite order, which assumes the validity of the forfeiture at the beginning. And the part about contesting the forfeiture says all kinds of terrible things will happen to you if you have a frivolous claim. So there seemed to be, and it did strike me that the difference between this explanation of the remission and the one in the ultimate letter, which went on for two pages, tells you something about how clear this explanation is. And that letter certainly did provide more details. But I would point this court to something that our sister circuit and the Seventh Circuit pointed out in the U.S. v. Miscellaneous Firearms case. And that is that these petitions for remission are actually very common and they're commonly granted. At page 713 of that decision, the Seventh Circuit noted, since petitions for remission or mitigation are frequently granted, administrative proceedings often eliminate the need for court proceedings. And so whether or not this notice provides the petition for remission option first or the claim option first, the reality is that both of these are very common options used by people who get this forfeiture notice. And they achieve very different things and require very different standards. Both of them require that the person either petitioning or claiming these assets demonstrate that he's an owner. And I submit that that's exactly what Mr. Barnes was doing at ER 45 when he submitted his petition for what he called his request for remission, which actually mirrors the language of this notice at ER 41. Someone who is requesting remission is acknowledging, yes, there is a valid legal basis for forfeiting my possessions that were seized. But I'm asking for the agency's mercy for the following reasons. On the other hand, someone who is claiming... And the reason that was ultimately assumed was that there was a connection to a drug crime, right? That's correct. He never said that. The evidence in the record, and it comes at that denial of his petition for remission, is that when asked about this approximately pound of marijuana and the suspected crack cocaine... I'm saying that he never said it in his petition or whatever it was. He never said laid out facts which would have made him an invalid forfeiture. Mr. Barnes never said anything at all about whether the guns had been used to facilitate a drug crime. That was the DEA's theory, though. That is what's cited in this notice, is there is a citation... He was not charged with a drug crime. He was not charged with a drug crime. All the arguments about Mr. Barnes, I guess we could call it a parallel criminal proceeding, really have nothing to do with the forfeiture of these 13 legal firearms. That parallel criminal charge for which Mr. Barnes was acquitted only sought the forfeiture of the shortened shotgun. That was not the mechanism through which the government ever sought to forfeit these 13 legal firearms. The government wasn't charging him with a drug crime. The fact that he wasn't responding as to whether or not these guns were furtherance for a drug crime is not particularly surprising. Nobody was charging him with a drug crime. He was never charged with a drug crime, but this notice that he received cited to 21 USC 881 and specifically noted that this property was either used or acquired as a result of a violation of the Controlled Substances Act and then provided that citation which Mr. Barnes could have looked up or asked his appointed counsel about. And 881A11 provides specifically that firearms can be forfeited if they are used in connection with a drug crime. And what that denial of Mr. Barnes' petition for remission noted in that letter is that when asked at the search warrant why he had these guns, he responded in part because he had drugs. That was the basis for the DEA sending this. That's not what happened. That's what we have in the record. This court also just. We have in the record that he said that he had the marijuana, but not the because. I'm sorry, I didn't catch that. Not the because part. He responded in part that he had the drugs. I can find the exact phrasing that this court would like. It comes as part of the DEA's denial that was sent on August 6th of 2013 that begins at ER 52. And specifically on page ER 53, the DEA notes, when questioned about the firearms, you explained in part that you had weed. That's what's in the record about this. Now, this court previously asked Mr. Sadie about whether or not Mr. Barnes had submitted any declaration indicating that he was confused. The answer is no. And, in fact, I would add that Mr. Barnes did submit a declaration as part of his supplemental briefing in his Rule 41G motion to the district court and, again, only talked about his ownership of these guns and about the fact that he and his wife had acquired them legally. He never contested whether or not he had used or intended to use them as part of drug trafficking. And he never alleged that he was confused by the notice. And he never said that he had intended to file a claim. In fact, what we know is that he did not assert that this should have also been a claim until after he was acquitted by the district court, again, of that sort of parallel criminal charge that only applied to the short-barreled shotgun. And the district court judge made the offhand comment that now you can get your guns back, Mr. Barnes. It's only at that point that we see that Mr. Barnes sought to have now the same district court judge who has made that comment adjudicate this question of his guns that had actually been administratively forfeited long before because no one had filed a claim contesting the legal validity of forfeiting them on the theory that they were used or intended to be used to facilitate drug trafficking. Well, I'm not sure that advances your case. That just adds to the confusion of the notice that you may well have decided not to pursue it as an overt claim because he had these charges pending and he may not have felt that he had the grounds to do it. Again, the charges that were pending explicitly listed a forfeiture notice, a forfeiture allegation, but listed only the one gun that was ... That's not my point. My point is that he may have, once he got acquitted, felt he had a strong case for making a claim. And you say, well, too bad, too late because it's already been forfeited administratively. He was acquitted more than a year after he received this notice at ER 41 and elected to compose on his own a letter in which he copied the language of requesting remission, this first option, rather than copying the language of I wish to contest the forfeiture, meaning challenge its legal basis in the first place. He nominated to do that. And I have to go back again to the standard for having constitutionally sufficient due process here, that a person of common intelligence could understand his options. And it seems clear from this record that Mr. Barnes and his wife both received these notices and carefully assessed the 14 guns that were listed. They went through item by item and decided who was going to include which guns and which ammunition in their submissions to the DEA. And then didn't come up with that language in a vacuum. They specifically said, I request remission, and that duplicates the language here on the notice and specifically duplicates the language under option one that the DEA provides rather than option two, which would have been to, quote, contest the forfeiture. Neither of them said that. The DEA had a reasonable basis for believing under 21 U.S.C. 881A11 that these guns were used or intended to be used to facilitate drug trafficking, and Mr. Barnes never contested the validity of that forfeiture. Unless the panel has any further questions, I see that my time is up, and I'll submit. We'll give you a minute for rebuttal, but only a minute. Thank you, Your Honor. Three quick points. First of all, the idea that the criminal procedure had nothing to do with what happened administratively is contrary to the statute. The statute in 983B1 talks about related cases and appointment of counsel. 981G2 provides for stay when there's a related criminal case. These are related. Second, the citation to miscellaneous, I think very supportive of our position, because what they're saying is if it's mooted out, you don't have to fight about the claim. And so the idea of having both of those things happening at the same time. If what's mooted out? The return. If they're going to return it in a mitigation role, then why do you have to fight about the claim about whether it's forfeitable? So at least that's what I heard the government was citing miscellaneous for. I think that supports the position that there are both things happening. And third, the supplemental statement was responding to a very specific question that I think reflects the confusion that was going on. He was asked, well, how about the other seven guns? He was trying to figure out how to comply by having his wife have some of the ones in her name, but they were both joint property, and he was explaining that, why he was saying all of the weapons should be returned. They're all mine or jointly mine, and there's no basis for them to be seized. Thank you.
judges: Fisher, Berzon, Watford